IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAWNA L. CHIPMAN,                                          CV. 07-376 TC

        Plaintiff,                                      OPINION AND ORDER

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

COFFIN, Magistrate Judge:

### INTRODUCTION

Plaintiff Dawna Chipman ("Chipman"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner is affirmed.

///

1 - OPINION AND ORDER

## **PROCEDURAL BACKGROUND**

Chipman filed an application for supplemental security income ("SSI") disability benefits in 1996, which was denied by an ALJ on June 25, 1998. Tr. 103-21, 979. The Appeals Council denied Chipman's request for review on February 10, 2000. Tr. 94-95, 979. Chipman did not pursue an appeal of the 1998 ALJ decision, and it therefore became the final decision of the Commissioner. 20 CFR §§ 416.1481; 422.210. Therefore, the period under review is June 26, 1998, the day after the Commissioner's final decision on Chipman's first application, through September 30, 1999, her date last insured.

Chipman filed this application for benefits on August 29, 2000, alleging disability since July 18, 1998, due to fibromyalgia, PTSD, TMJ, ADHD, and back pain. Her application was denied initially and upon reconsideration. On May 16, 2002, a hearing was held before an Administrative Law Judge ("ALJ"), Gary Elliott. In a decision dated May 28, 2002, the ALJ found Chipman was not entitled to benefits. The Appeal's Council denied Chipman's request for review, and she sought judicial review in this court. The parties stipulated that the case should be remanded for additional administrative proceedings. On October 18, 2005, ALJ William Stewart conducted the hearing on remand. Tr. 1227-1245. On November 22, 2006, ALJ Elliott issued a decision finding Chipman not entitled to benefits. The Appeal's Council denied Chipman's request for review.

## **STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

2 - OPINION AND ORDER

can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## FACTUAL BACKGROUND

Chipman was born in 1964, and was 34 years old at the time of the alleged onset of disability. She completed an Associates Degree in college. Tr. 46.[1]

The medical records in this case accurately set out Chipman's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Chipman contends that the ALJ erred by: (1) issuing a decision when he did not conduct the hearing; (2) improperly rejecting Dr. Rohrbaughs's opinion; (3) improperly rejecting Dr. Haydon's opinion; (4) failing to address limitations identified by nonexamining physicians; (5) improperly rejecting Dr. Newcomb's opinion; (6) improperly rejecting lay witness testimony; (7) improperly assessing her RFC; and (8) failing to perform a functional analysis of her past jobs.

I. Hearing Decision on Remand

ALJ Elliott conducted the initial hearing in 2002. ALJ Stewart conducted the hearing on remand in 2005. ALJ Elliott issued the second ALJ decision which was, as plaintiff concedes, "based upon evidence adduced at the remand hearing." Plaintiff's Opening Brief, p. 7. This is all that is required by 42 USC § 405(b)(1).

Chipman argues that ALJ Elliott did not have the opportunity to observe his demeanor at the remand hearing. However, ALJ Elliott found Chipman less than credible based on other factors, not including demeanor. Tr. 983-97.

II. Physician Opinions

A. Paula Rohrbaugh, Ph.D.

Dr. Rohrbaugh saw Chipman on July 1, 1998. Tr. 697-99. Prior to the interview, Dr. Rohrbaugh reviewed the December 1996 evaluation of psychiatrist Suzanne Paulsen, M.D. Dr. Rohrbaugh opined that Chipman had Post Traumatic Stress Disorder (PTSD), and that she would require 20-30 treatment sessions in order to make significant progress addressing the symptoms.

4 - OPINION AND ORDER

Dr. Rohrbaugh next saw Chipman in October or November 1999. Tr. 887. Dr. Rohrbaugh described working with Chipman to decondition strong emotional reactions, and stated that it was too early to tell whether she would succeed.

In August 2000, Dr. Rohrbaugh completed a Mental Impairment Questionnaire prepared by counsel. Tr. 878-86. She saw Chipman nine times between July 1998 and February 2000. Much of the document is illegible, but Rohrbaugh checked off that her patient exhibited symptoms of sleep disturbance, mood disturbance, emotional lability, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, intrusive recollections of a traumatic experience, generalized persistent anxiety, and hostility and irritability. Tr. 879. She assessed Chipman's GAF score as 35, and indicated that it had been no higher than 40 in the past year. Dr. Rohrbaugh checked boxes indicating that Chipman would need to work at a reduced pace if employed full time, that her health problems would worsen if working full time, that she would have substantial difficulty working with the public, supervisors or co-workers, and that she would be expected to be absent from work because of symptoms more than four times a month.

In October 2000, Dr. Rohrbaugh wrote to Vocational Rehabilitation staff that Chipman was "quite severely handicapped" and that it was "almost impossible...to maintain the interpersonal interactions necessary in most work settings." Tr. 691.

Finally, in March 2002, Dr. Rohrbaugh wrote that, at the time she last saw Chipman, "there was no question that she was disabled by her emotional problems." Tr. 799.

The ALJ noted Dr. Rohrbaugh's opinions, and gave them limited weight "as it appears Dr. Rohrbaugh was trying to get vocational rehabilitation to pay for more treatment. This evidences

5 - OPINION AND ORDER

secondary gain." Tr. 992. This reason is not valid, in that Dr. Rohrbaugh wrote that she did not want to start treatment that could not be finished because it would be detrimental to the patient.

The ALJ stated that Dr. Rohrbaugh's October 2000 disability opinion did not include specific functional support. The ALJ summarized the thousand page medical record in about twelve pages, noting dozens of inconsistencies among the medical providers. An ALJ must give specific, legitimate reasons for rejecting a controverted medical opinion, and may do so by summarizing the conflicting evidence in detail and interpreting it. *Magallanes v. Bowen,* 881 F2d 747, 751 (9th Cir 1989). The ALJ is solely responsible for resolving conflicts in the evidence. *Morgan v. Comm'r,* 169 F3d 595, 601 (9th Cir 1999). This court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes,* 881 F2d at 755.

Chipman bears the burden of establishing that she was disabled before her date last insured, September 30, 1999. She was not disabled, by prior decisions of the Commissioner, before June 26, 1998. Dr. Rohrbaugh first saw Chipman in July 1998, and assessed PTSD. In August 2000, a year after Chipman's date last insured, Dr. Rohrbaugh checked boxes indicating a variety of functional limitations, and assessed a GAF score of 35. Dr. Rohrbaugh's opinion is directly contradicted by Jim Greenough, Ph.D., who saw Chipman in April 2000 and assessed a GAF score of 52 with minimal functional limitations. Tr. 628-32. Dr. Rohrbaugh's opinion is directly contradicted by the opinion of Louise Fullerton, M.S., who counseled Chipman between June 1998, when she assessed a GAF score of 50, and July 1999, when she assessed a GAF score of 58.

Plaintiff contends that Dr. Rohrbaugh's opinion is consistent with the opinion of Shayne Haydon, Ph.D., who completed a questionnaire in which he opined that Chipman would have

6 - OPINION AND ORDER

difficulty with dealing with the stress of semiskilled and skilled work, and would have difficulty maintaining socially appropriate behavior. Tr. 919. This opinion is of limited relevance as it was offered in April 1997, more than a year before Chipman's alleged onset date and during a period when it has been determined that she was not disabled.

Chipman argues that Dr. Rohrbaugh's opinion is supported by the opinion of Susan Newcomb, M.D., offered on a form prepared by counsel, that endorses numerous functional limitations. Tr. 857-63. However, this opinion was rendered in April 2002, well after plaintiff's date last insured, and Dr. Newcomb specifically noted that she filled out the form by asking Chipman herself what the answers should be.

The ALJ's determination to give little weight to Dr. Rohrbaugh's opinion is supported by specific and legitimate reasons supported by substantial evidence.

B. Shayne Haydon, Ph.D.

Dr. Haydon evaluated Chipman in July 1997. Tr. 361-68. He noted she was taking a computer class and worked in her garden, and that she had above average intellectual capabilities. The Beck Depression Index revealed a mild degree of depressive symptoms, and the MMPI-@ indicated Chipman "is apt to see people as selfish, dishonest, and opportunistic. As such, she may feel justified behaving in similar ways." Dr. Haydon assessed a GAF score of 65, indicating mild symptoms, but inconsistently assessed moderate limitations in her ability to interact with the public, to get along with co-workers, to accept instructions, and to work in coordination with others.

As the ALJ noted, Dr. Haydon's July 1997 evaluation is not internally consistent. The ALJ articulated clear and convincing reasons, supported by substantial evidence, to find Dr. Haydon's assessment entitled to some weight.

C.  Dick Wimmers, Ph.D.

Dr. Wimmers, a nonexamining physician, reviewed the medical record in December 2000. Tr. 701-16. He assessed moderate limitations in Chipman's ability to work in coordination with or proximity to others, to interact appropriately with the general public, to accept instruction and respond to criticism from supervisors, and to set realistic goals or make plans independent of others.

The ALJ stated that Dr. Wimmers assessed Chipman with dysthymia and PTSD, and similar limitations as those identified by Dr. Haydon. Tr. 992. The ALJ gave them weight "to the extent they are consistent with the 'B' and 'C' criteria noted above and the residual functional capacity." *Id.*

Chipman argues that the ALJ erred by rendering vague and conclusory assertions regarding Dr. Wimmers's opinions. In addition, Chipman contends that the ALJ erred by rejecting Wimmers's opinion that Chipman has moderate limitations in the ability to set realistic goals and make plans independent of others.

The ALJ explicitly gave Dr. Wimmers's opinion weight to the extent that it was consistent with his prior discussion in which he noted many factors contradicting any serious limitation in the ability to set goals or make independent plants. The ALJ gave great weight to the fact that Chipman attended school full time, commencing in September 1997. Tr. 342, 985. Chipman reported in January 1997 that she had a 3.7 grade point average. Tr. 350. The ALJ

gave this evidence great weight. Tr. 986. The ALJ did not err in rejecting some of the limitations assessed by Dr. Wimmer.

    D. Susan Newcomb, M.D.

Dr. Newcomb completed a RFC assessment form in April 2002, nearly four years after Chipman's date last insured. Tr. 857-63. Dr. Newcomb noted that it was unclear whether Chipman was malingering, that there was no objective evidence to support any diagnosis, that she had a low frustration tolerance, that her symptoms would interfere with her ability to concentrate, that she would need to work at a reduced pace if employed full time, and that it is reasonable to expect that Chipman would experience difficulty with stamina, pain or fatigue if working full time. A physician's opinion that is premised solely on a plaintiff's subjective complaints and testing within the plaintiff's control, as admitted by Dr. Newcomb, is properly given the same weight as plaintiff's own credibility. *Tonapetyan v. Halter,* 242 F3d 1144, 1149 (9th Cir 2001). Chipman has not challenged the ALJ's determination that she is not fully credible. It was not error for the ALJ to reject Dr. Newcomb's opinion.

III. Lay Evidence

Chipman's mother, Patricia Chipman, completed a lengthy questionnaire in September 2000. Tr. 538-49. She stated that her daughter is "extremely intolerant of opinions that do not agree with hers, and even slight imperfections." Tr. 539. She has no friends as she disagrees with them over minor issues. Tr. 540. She had problems relating to store clerks, church members, and medical professionals. Tr. 539-41. Chipman does household chores well, but slowly. Tr. 546. Ms. Chipman said that her daughter had side effects from medication including stomach upset and the anti-depressants "leave her barely able to function at all."

The ALJ noted Ms. Chipman's statement, and that there was contrary medical evidence. Tr. 996. The ALJ noted that Ms. Chipman testified about side effects of anti-depressant medication even though the medical record shows that Chipman discontinued these medications on her own within two to three days of starting them and before any therapeutic effect could be realized. Tr. 983. A lay witness statement that conflicts with medical evidence is properly rejected. *Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001). The ALJ noted that Ms. Chipman did not discuss the fact that, during the period at issue, 1998, plaintiff worked for her mother cleaning apartments. Tr. 549, 988. The ALJ did not err in rejecting the lay witness testimony.

IV. Residual Functional Capacity and Hypothetical Question

Chipman challenges the RFC analysis and hypothetical question on the bases found lacking above. Accordingly, Chipman failed to carry her burden to show that she cannot perform past relevant work as a production assembler.

## CONCLUSION

The Commissioner's decision that Chipman did not suffer from disability and is not entitled to benefits under Title II is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED

Dated this 22 day of August, 2008.

THOMAS M. COFFIN
United States Magistrate Judge